# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68408-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| QUY DINH NGUYEN, | ) | ORDER GRANTING |
| | ) | MOTION TO PUBLISH |
| Appellant. | ) | |
| | ) | |

Respondent State of Washington has filed a motion to publish the court's opinion entered December 23, 2013. After due consideration, the panel has determined that the motion should be granted. Now therefore, it is hereby

ORDERED that respondent's motion to publish the opinion is granted.

Done this 10th day of February, 2014.

FOR THE PANEL:

2014 FEB 10 AM 11: 45
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED



FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2013 DEC 23 AM 10: 37

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68408-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| QUY DINH NGUYEN, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 23, 2013 |
| | ) | |

VERELLEN, J. — Following a plea bargain, Quy Dinh Nguyen was convicted of

second degree murder and conspiracy to commit leading organized crime. Nguyen

challenges the trial court's denial of his motion for a continuance to allow his newly-

appointed attorney four to six months to prepare for a hearing on his motion to withdraw

his guilty plea. Nguyen contends that the trial court violated his right to counsel and due

process by refusing to continue the hearing, and that his attorney provided ineffective

assistance as a result. Finding no error, we affirm.

## FACTS

Nguyen was a leader of a gang involved in growing and distributing marijuana

and operating illegal gambling machines. After Nguyen's brother was convicted for

shooting another gang member, Nguyen wanted to punish Hoang Nguyen (Hoang) for

testifying against his brother. Nguyen arranged for his associate Le Le to pay Jerry

Thomas $5,300 to shoot Hoang. Thomas's first attempt to shoot Hoang was

unsuccessful because his gun jammed. Thomas later approached Hoang in a car and shot him in the head, killing him. Afterward, Nguyen paid Thomas as agreed.

With the assistance of a confidential witness, police identified Nguyen, learned of his role in the killing, and uncovered his leadership role in the marijuana and gambling operations. The State charged Nguyen with conspiracy to commit first degree murder, attempted first degree murder, conspiracy to commit first degree murder, and violation of the uniform controlled substances act (VUCSA). The State later amended the information to add charges of leading organized crime, second degree murder, first degree assault, conspiracy to commit first degree assault, conspiracy to commit first degree professional gambling, and conspiracy to commit VUCSA.[1] The case proceeded to trial.

After jury selection and opening arguments, Nguyen accepted the State's offer to plead guilty to second degree murder with a firearm enhancement and conspiracy to lead organized crime. In his statement on plea of guilty, Nguyen acknowledged the factual basis for the murder plea as follows:

> On January 7, 2007 and January 8, 2007, I asked a person who worked for me to hire another person to shoot Hoang Van Nguyen with a firearm. At my direction this third person shot Hoang Van Nguyen in Tukwila, King County, Washington on January 8, 2007. Although I did not intend for this third person to kill Hoang Van Nguyen, Hoang Van Nguyen died as a result of being shot. I paid this third person $5,300 for shooting Hoang Van Nguyen.[2]

---

[1] Nguyen was charged in federal court with conspiracy to manufacture marijuana. He pleaded guilty to that charge as part of a negotiated agreement, under which the federal prosecutor agreed to recommend that Nguyen receive the same length of sentence for the federal charge as he received for the state charges.

[2] Clerk's Papers at 44.

2

Nguyen's attorney Jennifer Cruz informed the court that Nguyen's plea was voluntary:

> And your Honor we did have an opportunity, both [co-counsel] Mr. [Brian] Todd and I, to go over the Statement of Defendant on Plea of Guilty with Mr. Nguyen. Both—two interpreters. Once I went over it with Mr. Nguyen, and once Mr. Todd went over it with Mr. Nguyen. And he was able to ask any questions that he had. He had a couple of questions, and we were able to answer those questions for him. He understands that by pleading guilty today he is giving up the several constitutional rights. The most important one at this point, and at this juncture is his right to a trial. . . . I believe that he is making a knowing, intelligent, and voluntary plea today to both the murder in the second degree, and also the conspiracy to commit leading organized crime.[3]

Questioned by the prosecuting attorney, Nguyen informed the court that he understood the charges against him and was satisfied with his interpreters. He stated that he had the opportunity to discuss the charges with his attorneys, and intended to plead guilty to the reduced charges.

The court's colloquy with Nguyen included the following exchange:

COURT: I want to make sure that you are not being talked into anything, and that this is your idea to plead guilty to the two counts in the second amended information of murder in the second degree armed with a firearm, and conspiracy to leading organized crime. So is it your decision to plead guilty today?

NGUYEN: Yes.

COURT: Do you have any questions about what you are doing?

NGUYEN: No.

COURT: Do you want the court, meaning me, to accept your guilty plea?

NGUYEN: Yes.

---

[3] Report of Proceedings (RP) (Oct. 13, 2011) at 15-16.

COURT:     Do you believe you have had enough time to meet and talk with both your lawyers Ms. Cruz and Mr. Todd?

NGUYEN:    Yes, I have enough time.

COURT:     Okay. And they were able to answer all of your questions?

NGUYEN:    Yes.[4]

The trial court determined that Nguyen's plea was made knowingly, intelligently and voluntarily, and that there was a factual basis to support the plea. When the court inquired, Nguyen stated he had no questions. The court accepted Nguyen's plea.

Despite this, Nguyen moved to withdraw his guilty plea to second degree murder at his November 4, 2011 sentencing hearing, stating:

> I want to have a trial. When I signed the plea, I did not understand everything, and then—and then when the lawyer from the federal court told me that is going to be murder, it was then that I understood. . . . I swear, I never intend to kill him. I didn't kill him.[5]

Based on Nguyen's remarks, the trial court continued the hearing until December 16.

On November 17, in response to Nguyen's motion for new counsel, the trial court entered an order appointing attorney Al Kitching to represent Nguyen. The order calendared a December 16 evidentiary hearing and described the purpose of the hearing:

> Mr. Nguyen shall waive the attorney-client privilege with [his prior attorneys] Ms. Cruz and Mr. Todd insofar as to their understanding of Mr. Nguyen's knowledge and understanding of the plea agreement he entered into on October 13, 2011. The court anticipates that Ms. Cruz and/or Mr. Todd may be called to testify by either side during the motion to withdraw the plea.[6]

---

4 RP (Oct. 13, 2011) at 17.

5 RP (Nov. 4, 2011) at 15.

6 Clerk's Papers at 77-78.

On November 29, Kitching moved for a four- to six-month continuance to consult with Nguyen, consult with experts, and investigate the case. He argued that the discovery, which he said had not been provided to him, comprised nearly 28,000 pages, and that he needed to be versed in the historical facts of the investigation in order to advise Nguyen whether to withdraw his plea. The trial court denied the motion because the only issue to resolve was whether Nguyen entered his guilty plea knowingly, intelligently, and voluntarily.

Kitching again moved for a continuance. At the December 16 hearing, the trial court reiterated the narrow focus of its inquiry:

> COURT: Your focus should be on whether or not Mr. Nguyen entered his plea knowingly, intelligently, and voluntarily. It's not whether he got a good deal. It's not whether you would have advised him to do the same thing. The focus of this hearing, and what this Court's responsibility [is], is to determine whether or not Mr. Nguyen made a knowing, intelligent, and voluntary plea. It's that simple.[7]

Kitching explained the actions he had taken and felt he still needed to take in order to effectively represent Nguyen. He explained that he had not received the entire discovery, and had prepared for the hearing by reading the certification for determination of probable cause, speaking with Nguyen's former attorneys, and speaking with Nguyen. He explained that he had arranged for mental health specialist Dr. BrettTrowbridge to interview Nguyen. He informed the court that Dr. Trowbridge had met with Nguyen once and performed an initial assessment but needed additional time to determine whether Nguyen was incompetent at the time he entered his plea.

---

[7] RP (Dec. 16, 2011) at 6-7.

The court denied the motion to continue, explaining that Nguyen failed to make a "threshold showing" that his plea was invalid.[8] The court explained that no further examination by Dr. Trowbridge was necessary because any opinion Dr. Trowbridge might have about Nguyen's mental health on the day of the plea hearing would be speculative and would carry little weight. Having dispensed with the motion to continue, the court conducted the evidentiary hearing on Nguyen's motion to withdraw his plea.

The State presented the testimony of Nguyen's former trial attorneys, Cruz and Todd, seeking to establish that Nguyen understood that he was pleading guilty to murder.

Cruz and Todd both testified that they had no reason to question Nguyen's competency to stand trial or enter a plea, or to doubt that he understood his plea or the consequences thereof. Cruz testified that she met with Nguyen approximately 20 times over two years, all but once with an interpreter. Cruz averred that she had no difficulty communicating with Nguyen about his case through the interpreters. Cruz stated that Nguyen early on expressed confidence in interpreter Nova Phung, and specifically requested to have Phung interpret when available. Todd likewise testified that he never had any concern that Nguyen didn't understand the translation, and that Nguyen never expressed any concern about the quality of translation rendered by his interpreters.

Both attorneys explained that Nguyen was reluctant to enter a plea but changed his mind after Le and Thomas took plea deals and agreed to testify against him. Cruz and Todd testified that they discussed proposed plea deals with Nguyen the weekend before trial. At that time, Nguyen's primary concern was the length of his sentence. If

---

[8] RP (Dec. 16, 2011) at 9.

he lost at trial, he would likely be in prison the rest of his life. On the other hand, if he pleaded guilty to second degree murder, he would likely be sentenced to a maximum of 304 months. Nguyen told his attorneys that he wanted a maximum 12-year sentence, which his attorneys explained was not realistic. After jury selection and opening statements, Nguyen asked Cruz to request a 15-year deal and a manslaughter charge rather than murder. Cruz explained that this result was also not likely.

Both attorneys observed that Nguyen was nervous about his prospects at trial, and remained anxious after he entered the plea agreement, but appeared to be competent to enter his plea. Cruz testified that immediately before agreeing to the State's offer, Nguyen felt "overwhelmed," "tired," and "worried."[9] He was nervous because people in jail told him that his trial prosecutor had never lost a trial, and he "mentioned looking at the jurors and being worried as to what they were thinking when opening statements were made."[10] However, Cruz believed he was competent to either stand trial or enter a plea. Todd similarly observed nothing different about Nguyen's concentration or attentiveness to detail on the day he entered his plea.

Cruz testified that when the State formalized its offer of murder in the second degree, she went through the elements of that charge as articulated in the second amended information with Nguyen, and told him what the State would have to prove. Nguyen made no comments that led Cruz to believe he did not understand the elements of the charge. Cruz explained that Nguyen was reluctant to plead guilty to any charge

---

[9] RP (Dec. 16, 2011) at 30, 31.
[10] RP (Dec. 16, 2011) at 31.

of murder,[11] but he took the offer after he understood that the offense did not require proof that he intended to kill but simply that there was an intentional assault that resulted in someone's death. Todd likewise testified that he went through the elements of the crimes with Nguyen "several times," and "explained to him that there was an assault that occurred, and unfortunately as a result the victim died and that by definition is murder in the second degree."[12]

Cruz testified that Nguyen understood the elements of the conspiracy to commit leading organized crime charge, and was actively and intelligently engaged in the bargaining process. Cruz explained that Nguyen was particularly reluctant to plead guilty to leading organized crime because he did not want people in prison to think that he led organized crime. However, Cruz testified, Nguyen came up with a solution to his quandary by suggesting that the offense be charged as a conspiracy. The State agreed to Nguyen's proposal. Cruz explained that "we went back to [the State] to ask if we could do a conspiracy, and so then it was amended to a conspiracy."[13]

Cruz testified that Nguyen also demonstrated competency by requesting detailed changes to terms of the proposed no-contact order:

> A. He wanted to be able to have contact with Kristine Nguyen because of the fact that they had a child together . . . . and he was

---

[11] By way of background, Cruz explained that Nguyen did not contest the basic facts alleged in the information, but maintained he only wanted to hurt Hoang, not to kill him. Because of this, Nguyen was reluctant to plead guilty to an offense with the word "murder" in it. Cruz even discussed bringing the homicide as a federal offense without the word "murder" in it, but Nguyen declined because the federal offense carried a longer sentence. Cruz also testified that after Le and Thomas accepted plea deals and agreed to testify against Nguyen, Nguyen became more intent on resolving his case by entering a guilty plea.

[12] RP (Dec. 16, 2011) at 105.

[13] RP (Dec. 16, 2011) at 33-34.

concerned that with this no contact order, that he would not be able to have access to his son.

Q. So was it clear to you, based upon that interaction with Mr. Nguyen, that he was paying attention or that you believed he was paying attention to some of the more minute details and nuances of the impact that this plea agreement was going to have on him?

A. Yes.[14]

Following the hearing, the trial court denied Nguyen's motion to withdraw his guilty pleas and commenced the sentencing. After the State presented its recommendation, the trial court granted Nguyen's motion to continue the sentencing hearing until January 27, 2012. On January 26, Nguyen moved for another continuance and for reconsideration of the order denying his motion to withdraw his plea.[15] The trial court denied both motions. Nguyen was sentenced to 304 months in custody, to be served concurrently with his federal sentence.

Nguyen appeals.

## ANALYSIS

Nguyen contends that the trial court erred by refusing his repeated requests for a continuance of the plea withdrawal hearing, and that the denials deprived him of his right to counsel and right to due process. But Nguyen fails to persuasively demonstrate that the trial court erred, or that he was prejudiced by the court's decisions.

The decision of whether to grant a continuance rests within the sound discretion of the trial court, even when it is argued that a refusal to grant a continuance deprives a

---

[14] RP (Dec. 16, 2011) at 34-35.

[15] Attached to the pleadings was the declaration of expert witness Michael Iaria, who opined that Kitching was unable to provide effective assistance to Nguyen due to the trial court's rulings denying a continuance.

defendant of the right to due process and right to representation, and the reviewing court will affirm unless the record affirmatively demonstrates an abuse of discretion.[16] A court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.[17] Nguyen fails to make any showing that the trial court abused its discretion.

The trial court repeatedly emphasized that the purpose of the evidentiary hearing was to determine whether there was any valid basis for Nguyen's statement that he did not understand his plea, and particularly, that he did not know it was a murder charge, despite his contrary claims during his plea colloquy.

Although a defendant has no absolute right to withdraw a guilty plea, it is well settled that criminal defendants have the right to counsel in all critical stages of the proceedings against them,[18] and that a presentence motion to withdraw a guilty plea pursuant to CrR 4.2 is a critical stage.[19, 20] CrR 4.2(f) provides in pertinent part that

---

[16] State v. Sutherland, 3 Wn. App. 20, 21, 472 P.2d 584 (1970); State v. Bailey, 71 Wn.2d 191, 195, 426 P.2d 988 (1967) (quoting State v. Moe, 56 Wn.2d 111, 114, 351 P.2d 120 (1960)).

[17] State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997); State v. Barker, 35 Wn. App. 388, 397, 667 P.2d 108 (1983); State v. Henderson, 26 Wn. App. 187, 190, 611 P.2d 1365 (1980).

[18] U.S. CONST. amends. VI & XIV; WASH. CONST. art. I, § 22; CrR 3.1(b)(2); Gideon v. Wainwright, 372 U.S. 335, 337, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

[19] State v. Pugh, 153 Wn. App. 569, 579, 222 P.3d 821 (2009).

[20] Sentencing is also a critical stage. State v. Robinson, 153 Wn.2d 689, 694, 107 P.3d 90 (2005). Nguyen appears to suggest that he was deprived of due process and effective assistance in sentencing as well. However, Nguyen does not address the subject in argument, except to cite cases discussing sentencing. But these are isolated passing references, unsupported by any analysis of Nguyen's sentencing hearing or his attorney's performance at the hearing. Nguyen does not address the fact that the trial court did grant a continuance for sentencing. Nguyen's briefing of the issue is inadequate to permit review of the sentencing hearing.

"[t]he court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." Withdrawal may be necessary to correct a manifest injustice where the defendant establishes (1) he or she received ineffective assistance of counsel; (2) the plea was not ratified by the defendant or one authorized by him or her to do so; (3) the plea was involuntary; or (4) the plea agreement was not kept by the prosecution.[21] The defendant generally bears the burden of establishing the necessity for withdrawing the plea.[22] Such relief is entrusted to the trial court's discretion.[23]

The trial court's approach, requiring an initial threshold showing of a valid basis for Nguyen's motion to withdraw his plea, was reasonable. Because CrR 4.2 provides extensive safeguards for defendants in entering pleas, our Supreme Court describes the standard on a motion to withdraw as "demanding."[24] Moreover, CrR 4.2 requires that the defendant demonstrate a manifest injustice, in part because of these safeguards. As our Supreme Court explained:

> Prior to the adoption of CrR 4.2(f), this court followed a dual standard for analyzing motions to withdraw pleas depending on when the motion was made. A more liberal standard was applied if the defendant moved to withdraw before sentencing. The motion was addressed to the sound discretion of the court "to be exercised liberally in favor of life and liberty." Following the adoption of CrR 4.2(f), we abandoned the dual standard in favor of a singular, and more stringent, standard of "allowing a defendant to withdraw his plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." We adopted the uniform standard because an examination of other rules connected to CrR 4.2(f) "prevents a court from accepting a plea of guilty until it has ascertained

---

[21] State v. McCollum, 88 Wn. App. 977, 981, 997 P.2d 1235 (1997).

[22] State v. Osborne, 102 Wn.2d 87, 97, 684 P.2d 683 (1984).

[23] State v. Robinson, 172 Wn.2d 783, 791, 263 P.3d 1233 (2011); State v. Zhao, 157 Wn.2d 188, 197, 137 P.3d 835 (2006).

[24] State v. Taylor, 83 Wn.2d 594, 596, 521 P.2d 699 (1974).

that it was 'made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea.'" Thus, we felt, there were sufficient safeguards present before a plea was accepted to protect the defendant against involuntary pleas.[25]

In State v. Osborne, the court rejected a defendant's challenge to the denial of his motion to withdraw his guilty plea because the defendant had "specifically stated, several times during the plea proceedings, that his guilty plea was voluntary and free of coercion."[26] The Osborne court explained that these statements on the record constituted "'highly persuasive' evidence of voluntariness," requiring evidence, rather than a "mere allegation of the defendant," to overcome.[27]

The trial court did not err by requiring Nguyen to produce something more than his mere allegations. Had Nguyen made the required threshold showing that his plea was not valid, the trial court could have permitted more intensive discovery to develop the record on that issue. Nor was it error for the trial court to conclude that the period from November 17 to December 16, 2011 was adequate time for Kitching to uncover evidence sufficient to make a threshold showing that Nguyen did not understand his plea. The trial court was not required to authorize an attorney, at public expense, to spend four to six months getting up to speed on a voluminous record without the defendant first demonstrating any likelihood of establishing a manifest injustice.

Nguyen has not shown that he was denied the assistance of counsel or due process.[28] Having held that the denial of a continuance here did not completely deprive

---

[25] Robinson, 172 Wn.2d at 791-92 (citations omitted) (internal quotation marks omitted).

[26] 102 Wn.2d 87, 97, 684 P.2d 683 (1984).

[27] Id.

[28] Nguyen does not separately brief any specific due process claim.

12

Nguyen of his right to counsel or due process, we will not presume prejudice. Rather, Nguyen must demonstrate prejudice; specifically, that the result of the hearing would have likely been different had the continuance been granted.[29] He fails to make such a showing.

The record demonstrates that Nguyen and his attorneys were able to communicate regarding the case, that his attorneys read the plea statement to him, that his attorneys believed that he understood each of the paragraphs of the written plea statement, and that he was aware of what he was doing and why it was being done.

Nguyen insists that prejudice must be presumed here because he was completely denied his right to counsel, an error mandating reversal. Nguyen cites In re Application of Morris,[30] a case in which a defendant was represented at sentencing by an attorney completely unfamiliar with the facts of his case, and Powell v. Alabama,[31] in which an attorney was appointed on the day of trial to represent six defendants in a highly publicized capital murder trial. The Morris and Powell courts held it unnecessary to establish prejudice where circumstances result in a defendant being completely deprived of assistance of counsel. However, Morris and Powell are distinguishable, and their holdings inapposite.

A presumption of prejudice is limited to circumstances where the magnitude of the denial makes it likely that no competent counsel could provide effective assistance. The United States Supreme Court articulated this principle in United States v. Cronic:

---

[29] State v. Eller, 84 Wn.2d 90, 95, 525 P.2d 242 (1974).

[30] 34 Wn. App. 23, 24, 658 P.2d 1279 (1983).

[31] 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed 158 (1932).

> [W]e begin by recognizing that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated . . . . There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.
>
> Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. . . .
>
> Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.[32]

Here, Nguyen fails to demonstrate a complete denial of assistance by counsel, nor does he demonstrate that his case presented circumstances under which no fully competent lawyer could provide effective assistance. Because Nguyen fails to demonstrate a total deprivation of the right to counsel, his argument that structural error relieves him of the requirement to show prejudice is not persuasive.

Nguyen fails to persuasively argue that he was, in fact, prejudiced by the trial court's denial of his motions for continuance. Rather, the circumstances indicate that he received effective assistance. Kitching was appointed for a limited role, and was given approximately one month to prepare for a motion hearing. He was provided a transcript

---

[32] 466 U.S. 648, 658-60 & n.25, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) (footnotes omitted) (citations omitted) (The United States Supreme Court "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.").

14

of the plea colloquy, and was provided additional funds to allow an expert to assess Nguyen's mental health. Kitching interviewed Nguyen and Nguyen's trial counsel. Based on his investigation, Kitching forcefully advocated on Nguyen's behalf, arguing that Nguyen did not understand his plea because he was tired and stressed, potentially suffered from posttraumatic stress disorder, and may have been furnished inadequate translation services. Although the trial court rejected these arguments based on its evaluation of the evidence, the record reveals neither a total deprivation of the right to counsel nor identifiable prejudice to Nguyen.[33] To the extent that Nguyen relies on the declaration of Professor Iaria to establish prejudice, such reliance is misplaced. The declaration is nonspecific as to the particular facts of Nguyen's case that generate identifiable concerns. Nguyen fails to demonstrate that the trial court's denial of his motion for continuance was an abuse of discretion.

Nguyen also fails to persuasively argue that he received ineffective assistance of counsel. The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective representation.[34] To demonstrate ineffective assistance of counsel, Nguyen must show (1) counsel's performance was objectively unreasonable; and (2) the deficient performance prejudiced his defense.[35] Failure to establish either part defeats the ineffective assistance of counsel claim.

---

[33] See State v. Harrell, 80 Wn. App. 802, 804, 911 P.2d 1034 (1996); United States v. Hamilton, 391 F.3d 1066, 1070 (9th Cir. 2004).

[34] State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996).

[35] State v. Jeffries, 105 Wn.2d 398, 418, 717 P.2d 722 (1984) (quoting Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

Nguyen contends Kitching was unable to advise Nguyen whether withdrawing his plea was an intelligent course of action. But this was not Kitching's role. Kitching was required to demonstrate that Nguyen's motion to withdraw his plea had a basis in fact beyond Nguyen's self-serving allegations. Additionally, Nguyen's proposed standard would necessarily require lengthy continuances any time there was a large volume of discovery and new counsel was appointed to represent a defendant who has moved to withdraw a guilty plea. Without regard to whether there is any substance to the motion to withdraw, new counsel is not necessarily obligated to engage in an exhaustive review in order to represent the defendant on the motion to withdraw the plea. Further, Nguyen makes no showing that he is in any worse position for having pursued the motion. Because Nguyen fails to demonstrate either any error by Kitching or any resulting prejudice, he fails to demonstrate a basis for appellate relief.

Affirmed.

WE CONCUR: